IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WESTERN WORLD INSURANCE CO., a New Hampshire corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 07-cv-604-JPG |
| PENN-STAR INSURANCE COMPANY, RONNIE MCCOY, individually and d/b/a MCCOY CONSTRUCTION CO., and CITY OF EAST ST. LOUIS, ILLINOIS, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter coming before the Court on the motion for summary judgment filed by plaintiff Western World Insurance Company ("Western World") (Doc. 46). Defendants City of East St. Louis ("City") and Ronnie McCoy ("McCoy") have responded to the motion (Docs. 48 & 49), and Western World has replied to that response (Doc. 50).

**I.      Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where, as in this case, the parties do not dispute the essential facts, the only question is whether the movant is entitled to judgment as a matter of

law.

## II. Facts

This matter arose after the City awarded McCoy a contract to demolish a building at 320 Collinsville Road. When McCoy performed the demolition on June 19, 2006, he intentionally destroyed part of a wall common to 320 Collinsville Road and 318 Collinsville Road, not knowing it was a common wall. Once he realized the wall was common to both buildings, he stopped. Nevertheless, the demolition caused over $100,000 in damage to the 318 Collinsville Road building.

Defendant Penn-Star Insurance Company, the insurer of 318 Collinsville Road, paid for the repairs and brought a subrogation suit against the City and McCoy to recover the amounts it paid. *See Penn-Star Ins. Co. v. McCoy Constr. Co.*, No. 07-cv-175-DRH (S.D. Ill.). That underlying suit alleged causes of action for negligence and inverse condemnation. McCoy tendered the defense of the suit to its insurer Western World, which declined to defend or to pay for any resulting liability. The parties to the underlying suit have since settled.

The case before the Court is an action by Western World under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that the commercial general liability policy it issued to McCoy (No. NPP971220) ("Policy") does not cover the property damage to 318 Collinsville Road and that, as a consequence, it is not obligated to defend or indemnify McCoy. It believes the property damage to 318 Collinsville Road was not an "occurrence," as that term is defined in the Policy, and falls within several liability exclusions, including one for damage to common walls. The City and McCoy disagree and assert that the common wall exclusion is invalid.

2

**III.    Analysis**

Under Illinois law, which all parties agree applies to this action, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations end up being groundless, false or fraudulent. *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). To determine if the underlying suit alleges a situation potentially within the insurance coverage, the Court compares the complaint to the relevant provisions of the insurance policy. *Id.* If any theory of recovery in the underlying complaint falls within the insurance coverage, the insurer will have a duty to defend. *Id.*

Under Illinois law, interpretation of an insurance policy, even an ambiguous policy, is a matter of law. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993); *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998). In interpreting a policy, the Court must attempt to effectuate the parties' intention as expressed by the policy. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). If the policy is unambiguous, the Court must construe it according to the plain and ordinary meaning of its terms. *Id.* On the other hand, if the policy is ambiguous, the Court must construe all ambiguities in favor of the insured and against the insurer, who drafted the policy. *Id.* In making the comparison, the Court must give the policy and the complaint a liberal construction favor of the insured. *Country Mut. Ins. Co. v. Carr*, 867 N.E.2d 1157, 1160 (Ill. App. Ct.), *app. denied*, 875 N.E.2d 1110 (2007).

The Court now turns to the question of whether the underlying complaint alleges a

situation covered by the Policy.

    A.    <u>Occurrence</u>

Western World argues the Policy does not cover the demolition damage to 318 Collinsville Road because it only covers property damage if it is caused by an "occurrence," Policy, § I, ¶ 1.b(1), which the Policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," Policy, § V, ¶ 13. It argues that because McCoy intended to demolish the common wall, the damage to it was not an "accident." The City, on the other hand, argues that the damage to 318 Collinsville Road was an "accident" because, although McCoy intended to demolish the wall, he had no intention to cause harm to that building.

Under Illinois law, the term "accident" means "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Pekin Ins. Co. v. Miller*, 854 N.E.2d 693, 696 (Ill. App. Ct. 2006) (internal quotations omitted); *accord Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688-89 (7th Cir. 2008); *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing Co.,* 136 F.3d 1116, 1124 (7th Cir. 1998). Furthermore, "[t]he natural and ordinary consequences of an act do not constitute an accident." *Pekin Ins.*, 854 N.E.2d at 696 (internal quotations omitted). However, "[t]he focus of the inquiry in determining whether an occurrence is an accident is whether the *injury* is expected or intended by the insured, not whether the *acts* were performed intentionally." *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 723 (Ill. App. Ct. 2004) (emphasis in original) (*citing United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 932 (Ill. 1991)). Where an admittedly intentional act has an unintended and unforeseen consequence, the

event may be an "accident" that constitutes an "occurrence" in an insurance policy.

The Illinois Supreme Court addressed such a situation in *Wilkin*, a case in which Wilkin, an asbestos installation business, was sued in an underlying action to recover costs of removing asbestos from a school. *Wilkin*, 578 N.E.2d at 928. When Wilkin tendered the defense to its insurer, the insurer declined because, among other reasons, Wilkin had intentionally installed the asbestos, albeit not knowing or intending it to contaminate the school. *Id.* at 932. The insurer reasoned that the insurance policy, which only covered "accidents" that were not expected or intended," did not cover Wilkin's intentional installation of asbestos. *Id.* The Illinois Supreme Court rejected this position, holding that it was the release of asbestos fibers, which was clearly not intended, not the asbestos installation, that triggered the coverage. *Id.* The Court confirmed that the inquiry turns on whether the insured intended or expected *the result*, not whether he performed the acts intentionally. *Id.*

More recently, in *Lyons*, an insured had intentionally constructed levees that protruded onto a neighbor's property. *Lyons*, 811 N.E.2d at 721. The neighbors sued for trespass, and the insured tendered his defense to his insurer. *Id.* The insurer refused to defend on the grounds that the insurance policy, which only covered "accidents," did not cover the insured's intentional construction of the levees. *Id.* at 235. The court cited *Yates v. Bankers Life & Casualty Company*, 111 N.E.2d 516, 517-18 (Ill. 1953), which stated:

> [I]f an act is performed with the intention of accomplishing a certain result, and if, in the attempt to accomplish that result, another result, unintended and unexpected, and not the rational and probable consequence of the intended act, in fact, occurs, such unintended result is deemed to be caused by accidental means.

Based on the principles set forth in *Yates*, the court concluded that, while the insured's *acts* – the construction of the levees – were not accidents, if he did not intend to build the levees on the

neighbors' land, the *injury* they caused – encroachment on the neighbor's property – was "unintended and unexpected" and would therefore be an "accident" covered under the insurance policy. *Lyons*, 811 N.E.2d at 723. The court soundly rejected the insurer's argument that because the insured intended to construct the levees, there was no accident. *Id.* Furthermore, since there was no allegation in the underlying complaint that the insured intended to build levees on the neighbor's property, the insurer owed a duty to defend. *Id.*

*Pekin Insurance Company v. Miller*, 854 N.E.2d 693 (Ill. App. Ct. 2006), presents a similar situation involving an insured tree-cutting business which intentionally cut trees but did so on the wrong lots. *Id.* at 695. Citing *Lyons*, the Illinois Appellate Court held that since there was no allegation the insured intended the harmful result – the clearing of trees *from the wrong property* – the damage was unexpected and unintentional and constituted an "accident" covered by the insured's insurance policy. *Id.* at 696-97.

Similarly, in *Country Mutual Insurance Company v. Carr*, 867 N.E.2d 1157 (Ill. App. Ct.), *app. denied*, 875 N.E.2d 1110 (2007), the court examined a case where an insured was alleged to have negligently backfilled space around a basement wall and then used heavy earthmoving equipment in the area, causing damage to the basement wall and the house of which it was a part. *Id*. at 1162. The Court held that because the underlying complaint did not allege that the insured intended the damage to the wall, the damage was an "accident" and was therefore covered as an "occurrence" under the insurance policy. *Id.* at 1162-63.

Applying the rules form the foregoing cases to the case at bar, it is clear that the although McCoy intended to demolish the common wall, it is possible under the facts pled in the underlying complaint that he did not intend the demolition of the wall to damage the property at

6

318 Collinsville Road. The complaint in the underlying case includes allegations that McCoy began to destroy the common wall at the direction of the City when he should have known but did not know it was a common wall that should not be demolished. If McCoy intended to destroy the common wall but did not intend to damage 318 Collinsville Road, under the rule of *Wilkin*, *Lyons*, *Miller* and *Carr*, the property damage to 318 Collinsville Road was an "accident" and constitutes an "occurrence" under the Policy.

Western World points to *Century Surety Company v. Demolition and Development, Ltd.*, No. 04 C 7188, 2006 WL 163174 (N.D. Ill. Jan. 18, 2006), in support of its contrary position that the intentional act of demolition itself, even if the wrong property is damaged unintentionally, is sufficient to adjudge the property damage not accidental. *Demolition* involves an insured demolition company that intentionally demolished buildings on the wrong property at the direction of government officials. *Id*. at *2. The federal district court held that because the demolition company's acts of destruction were intentional, the damage to the wrong buildings was not an "accident" and was not covered under the insured's policy. *Id.* at 4.

*Demolition* simply cannot be squared with *Miller*. *Miller* dealt with trees, *Demolition* dealt with buildings, but the principles are identical and the results are different for no principled reason. This Court's job is to determine how the state's highest court would decide the issue, giving great weight to decisions of the state's intermediate appellate courts unless there is reason to believe the state's highest court would rule otherwise. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). It is not bound to follow decisions of its sister district courts, and does not find them persuasive when they differ in result from indistinguishable state cases on state law issues. For these reasons, the Court will apply the holding of *Miller*, which is

7

consistent with the Illinois Supreme Court's decision in *Wilkin*.[1]

Because the complaint in the underlying lawsuit alleges facts potentially constituting an "occurrence" under the Policy, Western World will not be excused from the duty to defend because the incident was not an "occurrence."

B.  Demolition and Wrecking Endorsement

Western World next argues that the Policy contains a specific endorsement (endorsement number WW174(12/99)) excluding coverage for damage to common walls like the one damaged in this case. That endorsement states, "This insurance does not apply to . . . damage to . . . common or party wall nor property damage to any other property at any time resulting from such damage." Demolition and Building Wrecking Limitation Endorsement, ¶ C.1. The City argues that Western World improperly unilaterally added the endorsement after the Policy was written. It notes that the Policy was issued August 19, 2005, and was effective through August 19, 2006, but that the "General Change Endorsement" purporting to add endorsement WW174 was dated October 4, 2005, was effective September 30, 2005, and was delivered to McCoy for the first time after the Policy was issued. The General Change Endorsement states that the original premium would not change because of the additional restrictions in the endorsement. Western World contends that the endorsement had been a part of the policy since its inception as evidence by the reference to endorsement number WW174(12/99) on the Policy's "Schedule of Forms and Endorsements." It further contends that even had endorsement WW174 not been a part of the original Policy, the Policy authorized Western World to amend it by endorsement.

---

[1]Western World cites a number of other cases involving an insured's faulty workmanship the caused damage to the structure it was hired to construct and subsequent underlying suits for breach of contract. Those cases are inapposite to the case at bar, which involves tort liability.

Policy, Common Policy Conditions ¶ B.  Because endorsement WW174 would clearly exclude liability for damage to the common wall in this case, the critical question is whether endorsement WW174 was a part of the Policy.

There is a genuine issue of material fact about whether endorsement WW174 was included as part of the Policy at its inception.  While the endorsement is referenced in the schedule of endorsements on the Policy and its predecessor policies, McCoy has provided affidavit testimony that the endorsement was not part of the original Policy, and there is no evidence it was actually included as a term of the predecessor policies.  While the notation of an endorsement on a schedule of endorsements in a renewal policy is sufficient to demonstrate an endorsement that was part of the original policy continued in effect in the renewal policy, *see Economy Fire & Cas. Co. v. Pearce*, 399 N.E.2d 151, 153-54 (Ill. App. Ct. 1979), there is conflicting evidence in this case about whether the endorsement was, in fact, attached to any of McCoy's policies with Western World.  In fact, the General Change Endorsement indicated Western World was changing the Policy to add endorsement WW174, which implies the endorsement was not already a part of the Policy.  From this evidence, a reasonable fact-finder could find that endorsement WW174 was not part of the original Policy.

There is also a genuine issue of material fact about whether Western World's attempt to modify the Policy to decrease coverage by including endorsement WW174 was valid because the change lacked consideration or McCoy's consent.  Parties may modify an insurance policy if both the insured and the insurer consent to the change.  *Henderson v. Bankers Life & Cas. Co.*, 54 N.E.2d 832, 835 (Ill. App. Ct. 1944).  Furthermore, where the change decreases the insurance coverage, it must be supported by consideration such as, for example, a decrease in the policy

9

premium. *See Protective Ins. Co. v. Coleman*, 494 N.E.2d 1241, 1246 (Ill. App. Ct. 1986); *see also* Lee R. Russ, *Couch on Insurance* § 25.18 (3d ed. 1997) ("If the insurer, after issuing a policy insuring against accident, notifies the insured or a change of classification greatly lessening the amount of the insured's indemnity, the insured's assent to such change is not to be conclusively inferred where the insured does not expressly assent, or forward his or her policy to have it rewritten as requested, and where the dues and assessments paid, and required to be paid, are the same as before."). In light of the uncertainty about whether endorsement WW174 was included in the Policy at its inception and about whether McCoy consented to have it added and received consideration for the change, summary judgment is not appropriate on the basis that the occurrence was excluded by endorsement WW174.

C. <u>Expected or Intended Injury Exclusion</u>

Western World argues that the Policy does not cover damages to the common wall because it excludes expected or intended injuries. The Policy states, "This insurance does not apply to . . . 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured. . . ." Policy, § I, ¶ 2(a). For the same reason the Court found the damage to the common wall was an accident, it finds that the damage to the common wall was not expected or intended property damage.

D. <u>Damage to Property Exclusion</u>

Western World argues that the Policy does not cover the property damage to 318 Collinsville Road because it excludes coverage for property damage to "[t]hat particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations. . . .," Policy, § I, ¶ 2.j(5), and to "[t]hat particular part of any property that must

10

be restored, repaired or replaced because 'your work' was incorrectly performed on it," Policy, § I, ¶ 2.j(6). The City argues that such clauses in commercial general liability polices are generally intended to exclude coverage for contract liability that arises out of the insured's failure to perform under the contract, not tort liability for physical damage to others. *See West America Ins. Co. v. Kamadulski Excavating & Grading Co.*, No. 05-cv-206-DRH-CJP, 2006 WL 1235751 (S.D. Ill. May 4, 2006).

A court must construe insurance policy provisions that limit or exclude coverage liberally in favor of the insured. *State Farm Mut. Auto. Ins. Co. v. Villicana,* 692 N.E.2d 1196, 1199 (Ill. 1998). To justify denial of coverage, the exclusion "must be clear and free from doubt." *Continental Cas. Co. v. McDowell & Colantoni, Ltd.*, 668 N.E.2d 59, 62 (Ill. App. Ct. 1996). Furthermore, the insurer bears the burden of affirmatively demonstrating an exclusion applies to limit or deny coverage. *Pekin Ins. Co. v. Miller*, 854 N.E.2d 693, 697 (Ill. App. Ct. 2006).

The Court is persuaded by the reasoning of the *Kamadulski* court. In that case, a construction company intentionally destroyed trees on property adjacent to the property on which it was hired to work. *Kamadulski*, 2006 WL 1235751 at * 1. The construction company's insurer argued that policy exclusions identical to those at issue in this case justified denying coverage for the property damage to the neighboring property. *Id.* at * 3. The court rejected this argument, noting that

> [t]hese two exclusions are business-risk exclusions, in that they apply to a party's less-than-adequate performance under the contract. The exclusions, in other words, reflect the principle that "[commercial general liability] coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."

*Id.* at * 3 (quoting *Home Indem. Co. v. Wil-Freds, Inc.*, 601 N.E.2d 281, 285 (Ill. App. Ct.

11

1992)).

Here, liability for the damage to 318 Collinsville Road is not contract liability to the City for McCoy's failure to perform the contract as promised. On the contrary, it is tort liability for physical damage to a party with whom McCoy had no contract. Thus, liberally construing the exclusions in favor of McCoy, the Court finds that the damage to the common wall is not the kind of business-risk liability excluded by § I, ¶ 2.j(5) and (6). Summary judgment is not warranted based on these exclusions.

## IV.     Conclusion

For the foregoing reasons, the Court **DENIES** Western World's motion for summary judgment (Doc. 46). The only issue remaining for trial is whether endorsement WW174 was part of the Policy. The current final pretrial conference and trial dates remain.

**IT IS SO ORDERED.**
**Dated:  June 8, 2009**

>                                                                s/ J. Phil Gilbert
>                                                                **District Judge**